**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrea Marks, ) | No. 03:10-cv-08039-PHX-JAT |
| )  Plaintiff,  ) | **ORDER** |
| ) vs. ) | |
| ) BANK OF AMERICA, N.A.; a foreign ) corporation, FEDERAL NATIONAL ) MORTGAGE ASSOCIATION dba Fannie ) Mae, a Federally Chartered Corporation, ) Black Corporations 1-5, White ) Partnerships 1-5, John Does 1-5 and Jane ) Does 1-5, ) )  Defendant.  ) | |

Plaintiff Andrea Marks argues that Defendant Bank of America N.A. ("Defendant") breached an agreement with the U.S. Treasury in which she was a third-party beneficiary. Plaintiff argues that Defendant did not fulfill contractual obligations per the Home Affordable Modification Program ("HAMP") Guidelines. As such, Plaintiff maintains that a suspension of any foreclosure or trustee's sale pending disposition of her request is mandated. (Pl. Amended Complaint ¶ 21). Pending before the Court is Defendant's Rule 12(b)(6) Motion to Dismiss. (Doc. #15). For the reasons that follow, the Court dismisses Plaintiff's complaint with prejudice.

**I. Background**

Plaintiff's property ("the Property") is located in Prescott Valley, Arizona. (Pl.

Amended Complaint ¶ 1). Plaintiff financed the purchase of the Property with funds underwritten or otherwise backed by Defendant Fannie Mae. (Pl. Amended Complaint ¶ 2). Defendant Bank of America N.A. ("Defendant") is now servicing loans formerly owned by Countrywide Mortgage as a result of Defendant's acquisition of Countrywide Mortgage. (Pl. Amended Complaint ¶ 6).

On August 17, 2009, Plaintiff retained New York Financial to assist her in submitting an application to Defendant for a loan modification under HAMP. (Pl. Amended Complaint ¶ 8). Plaintiff submitted her application on October 2, 2009. (Pl. Amended Complaint ¶ 9). Defendant advised her that Plaintiff qualified for assistance and modification of her loan. (*Id.*). Defendant informed Plaintiff that her mortgage payment would be reduced by almost fifty percent. (*Id.*). Plaintiff accepted the offer and requested the loan modification paperwork. (*Id.*). Plaintiff offered to make a payment and Defendant sought to obtain the modified payment from Plaintiff; however, Defendant was unable to process the payment. (*Id.*). Defendant advised her to send the payment with the signed loan modification documents she would receive within two weeks. (*Id.*).

Plaintiff waited for loan documents for two weeks. (Pl. Amended Complaint ¶ 11). Defendant then informed Plaintiff that "there could be more delay in getting the paper work for her signature." (*Id.*). During a November 2009 call between Plaintiff and Defendant, Defendant told Plaintiff it had "45 days to get the paperwork" to her. (Pl. Amended Complaint ¶ 12). Two weeks later, Defendant advised Plaintiff that the foreclosure date had been "pushed back" and that the paperwork delay seemed to be some sort of a "bank error" that would be corrected. (Pl. Amended Complaint ¶ 12-13).

In January 2010, Defendant foreclosed the Property and initiated a Forcible Entry and Detainer action. (Pl. Amended Complaint ¶ 16).

**II. Legal Standard**

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and

1 plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has a "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.* Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1202, pp. 94, 95 (3d ed. 2004)).

The Rule 8 pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts

alleged in the complaint in the light most favorable to the drafter[1] of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Schwarz v. U.S.*, 234 F.3d 428, 435 (9th Cir. 2000).

**III. Analysis**

In support of Defendant's Motion to Dismiss, Defendant argues that Plaintiff does not have: (1) standing to bring a suit for breach of contract; (2) an express, private right of action to sue for a violation of the HAMP; and (3) an implied, private right of action to sue for a violation of the HAMP. Based on the following reasons, the Court grants Defendant's Motion to dismiss with prejudice.

**A. No Standing to State a Claim for Breach of Contract**

Plaintiff attempts to sue on an agreement between Defendant and the U.S. Department of Treasury as a third-party beneficiary.[2] (Doc. #1-2, p. 5-6). Defendant maintains that Plaintiff lacks standing to make a breach of contract claim because Plaintiff is not an intended beneficiary. (Doc. # 15, p.1, 4-6). The Court agrees with Defendant and finds that Plaintiff lacks standing to bring suit for breach of contract because Plaintiff is, at most, an incidental beneficiary.

In order to present a claim for breach of contract, a plaintiff must allege the formation of a contract, its breach, and damages. *E.g., Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. App. 2004). Before a third party can present a claim for breach of contract, they must show that the contract was made for their direct benefit– that they are an intended beneficiary of the contract. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir.

---

[1] Given the procedural posture of the case and the pending Motion, the Court must construe the facts alleged in the Amended Complaint in the light most favorable to Plaintiff.

[2] Plaintiff has not provided the Court with a copy of the agreement referred to in Plaintiff's Amended Complaint (Doc. #1-2) or in Plaintiff's Response to Defendant's Motion to Dismiss (Doc. #23).

- 4 -

2000). The Ninth Circuit defines third party beneficiaries as:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Id* at 1211. (citing the RESTATEMENT (SECOND) OF CONTRACTS § 302 (1979)). "To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Klamath*, 204 F.3d at 1211.

"One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." *Id.* (citing RESTATEMENT OF CONTRACTS § 302(1)(b) cmt. d.). Under the HAMP, a qualified borrower would not be reasonable in relying on an agreement between a participating servicer and the U.S. Department of Treasury as manifesting an intention to confer a right on the borrower because the agreement does not *require* that the participating servicer modify eligible loans.[3] *Escobedo*, 2009 WL 4981618, *3. Even Fannie Mae, which has rights under the Agreement, cannot force a participating servicer to make a particular loan modification. *Id.* Fannie Mae can take steps against a participating servicer, but cannot impose a modification. *Id.* Thus, a borrower could not require the servicer to make any particular loan modification under the HAMP Agreement.

Furthermore, the Ninth Circuit has held that parties who benefit from government contracts are generally assumed to be incidental beneficiaries, and may not enforce the

---

[3]The agreement in *Escobedo* set forth Home Affordable Modification Program Guidelines. The Guidelines set forth eligibility requirements and state: "[P]articipating servicers are required to consider all eligible loans under the program guidelines unless prohibited by the rules of the applicable PSA and/or other investor servicing agreements." *Escobedo v. Countrywide Home Loans, Inc.*, 2009 WL 4981618, at *3 (S.D. Cal. 2009).

- 5 -

contract absent *clear intent* to the contrary. *Klamath*, 204 F.3d 1206, 1210-11 (9th Cir. 2000) (emphasis added). *See* RESTATEMENT OF CONTRACTS § 313(cmt. a) ("governmental contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested."). *See also County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244 (9th Cir. 2009) (outlining the difficulty of demonstrating third-party beneficiary status in the context of government contracts).

"Clear intent" is not shown "by a contract's recitation of interested constituencies, [v]ague, hortatory pronouncements, statement[s] of purpose, explicit reference to a third party or even a showing that the contract 'operates to the [third parties'] benefit and was entered into with [them] in mind." *County of Santa Clara*, 588 F.3d at 1244 (internal quotations and citations omitted). Instead, the contract's precise language must demonstrate a clear intent to rebut the presumption that the plaintiff is an incidental beneficiary. *Id.*

For example, in *Klamath* the Ninth Circuit held that although a contract between the United States and a dam operator operated to the irrigators' benefit and was "undoubtedly entered into with the irrigators in mind," nothing in the contract evinced an intention of the parties to the contract to grant the irrigators enforceable rights. 204 F.3d at 1211-12. As the Ninth Circuit explained, "[T]o allow them intended third-party beneficiary status would open the door to all users receiving a benefit from the Project achieving similar status, a result not intended by the Contract." *Id.* at 1212.

By applying the *Klamath* reasoning, the *Escobedo* court found that the Plaintiff was an incidental beneficiary of the HAMP agreement. *Escobedo*, WL 4981618, at *2-3. As such, the court denied plaintiffs' cause of action for breach of contract under the HAMP agreement. *Id.* The court reasoned that the agreement between Countrywide Home Loans and the U.S. Treasury was entered into in part for the benefit of qualified borrowers, but the language of the contract does not show that the parties intended to grant qualified borrowers the right to enforce the agreement. *Id.* at *2. *See Villa v. Wells Fargo Bank N.A.*, 2010 WL 935680, at *3 (S.D. Cal. 2010).

Even though one District Court in California allowed Plaintiff to proceed with a breach of contract claim, that Plaintiff had plead sufficient facts to plausibly support his third-party beneficiary theory by identifying the contract at issue and attaching a copy of the contract to his complaint. *Reyes v. Saxon Mortgage Serv.*, 2009 WL 3738177 (S.D. Cal. 2009). However, another District Court recently noted that, "although the overall HAMP program undoubtably has a goal of assisting homeowners, the HAMP Agreement *does not express any intent to grant borrowers a right to enforce the HAMP contract* between the government and loan servicer." *Benito v. Indymac Mortgage Serv.*, 2010 WL 2130648, *7 (D. Nev. 2010) (emphasis added).

Here, Defendant was not obligated to modify Plaintiff's loan. As a result, the Agreement does not grant Plaintiff the *right* to enforce the provisions of the agreement. Because Defendant was not required to admit or deny Plaintiff's loan, only to *consider*, Plaintiff could not have been reasonably believed that Defendant was obligated to modify her loan.

In addition, Plaintiff is not an intended beneficiary. If the Court were to grant Plaintiff third-party beneficiary status, the Court would be opening the door to potentially 3-4 million homeowners filing individual claims. *See Villa*, 2010 WL 935680, at *1 (stating that the breadth and indefiniteness of a class of beneficiaries is entitled to some weight in negating the inference of intended beneficiary status). Allowing such a large number of potential plaintiffs clearly contravenes the purpose of the HAMP as an administrative tool to effectuate the goals of the EESA. *Williams v. Geithner*, 2009 WL 3757370, *2 (D. Minn. 2009). Also, permitting these individual claims would undermine Freddie Mac's role as the compliance officer for the HAMP. U.S. Dep't of Treasury, Supplemental Directive 2009-08, at 4 (Nov. 3, 2009).[4]

As in *Klamath* and *Escobedo*, Plaintiff is an incidental beneficiary to a governmental contract between Defendant and the U.S. Treasury. Plaintiff claims that the contract was

---

[4]For further discussion, see *infra* II.B.

intended to benefit homeowners like her. However, Plaintiff's claim does not plausibly meet the requisite "clear intent" standard. While the intent of the HAMP might be to benefit qualified borrowers, statements of purpose are not enough to defeat the presumption against intended beneficiaries under government contracts. Rather, Plaintiff is an incidental beneficiary because there is no clear intent to the contrary.

Because Plaintiff is not an intended beneficiary of the agreement between Defendant and the U.S. Dept. of Treasury, Plaintiff does not have standing to sue for a breach of contract claim. As such, the Court grants Defendant's Motion to Dismiss.

**B. No Express Private Right of Action Exists Under HAMP.**

Furthermore, Plaintiff's allegations regarding breach of contract are simply an attempt at enforcing a private right of action under HAMP. *See Aleem v. Bank of Am., N.A.*, 2010 WL 532330, *4 (C.D. Cal. 2010). *See also Ung v. GMAC Mortg.*, 2009 WL 2902434, *9-11 (C.D. Cal. 2009) (dismissing, with prejudice, TARP-based claims pled as the basis for state law claims). Plaintiff's arguments under HAMP refer to recently enacted and rapidly evolving areas of legislative and administrative action. Below, the Court provides the requisite history to explain that an express right to sue fund recipients, like Defendant, does not exist under the HAMP. *See id.*

On October 8, 2008, President Bush signed into law the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765 (codified 12 U.S.C. § 5201 *et seq.*) ("EESA"). Section 109 required the Secretary of the Treasury ("the Secretary") to take certain measures in order to encourage and facilitate loan modifications. 12 U.S.C. § 5219. However, Section 109 did not create any private right of action against servicers for grievances relating to the EESA. *Ramirez v. Litton Loan Serv., LP*, 2009 WL 1750617, *1 (D. Ariz. 2009); *Barrey v. Ocwen Loan Serv., LLC*, 2009 WL 1940717, *1 (D. Ariz. 2009).

The EESA authorizied the Secretary of the Treasury, FHFA, Fannie Mae, and Freddie Mac to create the Making Home Affordable Program on February 18, 2009, which consists of two componets: (1) the Home Affordable Refinance Program, and (2) the HAMP.

*Williams*, 2009 WL 3757370, *2. The HAMP aims to financially assist three to four million homeowners who have defaulted on their mortgages or who are in imminent risk of default by reducing monthly payments to sustainable levels.

The HAMP works by providing financial incentives to participating mortgage servicers to modify the terms of eligible loans. On March 4, 2009, the Secretary issued guidelines under the HAMP requiring lenders to consider borrowers for loan modifications and suspend foreclosure activities while a given borrower was being evaluated for a modification. U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines (Mar. 4, 2009).[5]

Per designation by the Secretary, Freddie Mac serves as compliance officer for the HAMP. U.S. Dep't of Treasury, Supplemental Directive 2009-08, at 4 (Nov. 3, 2009).[6] The HAMP requires mortgagees to collect, retain, and transmit mortgagor and property data to Freddie Mac in order to ensure compliance with the program. *See* Supplemental Directive 2009-01, at 13-14, 19-21 (Apr. 6, 2009); Supplemental Directive 2009-06 (Sept. 11, 2009). As the compliance agent, Freddie Mac is charged with conducting "independent compliance assessments" including "evaluation of documented evidence to confirm adherence . . . to HAMP requirements" such as the evaluation of borrower eligibility. Supplemental Directive 2009-01, at 25-26.

Nowhere in the HAMP Guidelines, nor in the EESA, does it expressly provide for a private right of action. Rather, Congressional intent expressly indicates that compliance authority was delegated solely to Freddie Mac. By delegating compliance authority to one entity, Freddie Mac, Congress intended that a private cause of action was not permitted. *See*

---

[5]The HAMP guidelines are available at http://www.ustreas.gov/press/releases/reports/ modification_program_guidelines.pdf (last visited on June 15, 2010).

[6]Supplemental Directives cited herein are available at www.hmpadmin.com/portal/ programs/hamp/servicer.html (last visited on June 15, 2010).

*Reyes-Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001) (reiterating that "the doctrine of *expressio unis est exclusio alterius* instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded.").

Because Plaintiff is precluded from asserting a private cause of action under the HAMP, even disguised as a breach of contract claim, Defendant's Motion to Dismiss is warranted.

### 2. No Implied Right of Action under the HAMP

In addition to not expressly intending a private cause of action, the Court will not imply a right of action under the HAMP either.

"In the absence of clear evidence of congressional intent, [a court] may not usurp the legislative power by unilaterally creating a cause of action." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230-31 (9th Cir. 2008). Thus, to determine whether a federal statute was intended to create a private cause of action, the Supreme Court requires consideration of the following four factors: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted– that is, [whether] the statute create[s] a federal right in favor of the plaintiff"; (2) whether "there [is] any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether the cause of action is "consistent with the underlying purposes of the legislative scheme"; and (4) whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." *Id.* (quoting *Cort v. Ash*, 422 U.S. 66, 78 (1975)).

First, Plaintiff is not one of the class for whose "especial benefit" the HAMP was enacted. While Plaintiff may be a part of a class of homeowners whom EESA and HAMP are *intended to benefit*, the statute sweeps much more broadly than their "especial benefit." These statutes are addressed to large-scale economic phenomena affecting not only distressed homeowners, but also financial institutions and homeowners at large. The statutes alter the

- 10 -

mechanics of home foreclosure in an effort to stem the downward spiral of home prices as a national phenomenon. The economic stimulus effort attempts to promote the welfare of foreclosure parties generally, but it does not connote the power to delay foreclosures.

Second, legislative intent does not create a cause of action under the HAMP. The HAMP eases restrictions on lenders and servicers and encourages loan modifications. 12 U.S.C. § 5219. Specifically, the HAMP was intended to effectuate the goals of the EESA. *Williams*, 2009 WL 3757370, *2. In addition, legislative history indicates that the right to initiate a cause of action lies with the Secretary via the Administrative Procedure Act.[7] Allowing the Plaintiff to assert a private cause of action would contravene clear legislative intent. *See Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) (stating that the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others).

Next, Plaintiff's proposed cause of action would not further the underlying legislative scheme. As previously mentioned, Freddie Mac was designated as the compliance officer. As such, the enforcement of the modification program is contemplated only from the top down. Furthermore, the HAMP Guidelines already impose extensive data reporting requirements on servicers. *See* Supplemental Directive 2009-01, at 13-14, 19-21. Plaintiff's cause of action would not further the legislative intent because the HAMP Guidelines already designated a scheme to correct for any mortgagee wrongdoing.

Last, loan modification requirements for pending foreclosure proceedings, are generally relegated to state law. Real property interests and contract rights are paradigms of state law concern. In Arizona, the courts have already expressly rejected the suggestion that EESA creates a private right of action against lenders. *See Ramirez*, 2009 WL 1750617, at

---

[7]Under the Administrative Procedure Act ("APA"), any judicial review would be limited due to the strictures of the delegating statute, the EESA, in addition to rule and adjudication guidelines set forth under the APA. *See* 12 U.S.C. § 5229(a); 5 U.S.C. §§ 553, 554, 556, and 706.

*1; *Barrey*, 2009 WL 1940717, at *1. Because the HAMP is the *administrative* program to accomplish the EESA's goals, a private right of action is clearly precluded.

Because Plaintiff's claim fails to meet the requisite four factors to allow for an implied private right of action, the Court finds that Defendant's Motion to Dismiss with prejudice is further warranted.

### C. Quiet Title

Plaintiff's quiet title claim is based on the claim for breach of contract as explained above. Since that claim fails, Plaintiff's quiet title claim also fails.

### D. Declaratory and Injunctive Relief

Plaintiff's claim for declaratory and injunctive relief is also based on the claim for breach of contract. Again, since the claim for breach of contract fails, Plaintiff's claim for declaratory and injunctive relief also fails.

## IV. Conclusion

Because Plaintiff is an incidental and not an intended beneficiary, Plaintiff lacks standing to bring a suit for breach of contract. Furthermore, Plaintiff does not have an express or implied private right of action to sue for violations of the HAMP.

Accordingly,

**IT IS ORDERED** that Defendant's 12(b)(6) Motion to Dismiss (Doc. #15) is granted with prejudice.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and close this case.

DATED this 21st day of June, 2010.

James A. Teilborg
United States District Judge

- 12 -